799 N.E.2d 63 (2003)
In the Matter of the TERMINATION OF the PARENT-CHILD RELATIONSHIP OF L.V.N., L.A.N., and D.N.
Lynda Newby, Mother, Appellant-Respondent,
v.
Boone County Division of Family and Children, Appellee-Petitioner.
No. 06A05-0308-JV-399.
Court of Appeals of Indiana.
November 25, 2003.
*65 Pamela Buchanan, Zionsville, IN, Attorney for Appellant.
Richard B. Porter, Lebanon, IN, Attorney for Appellee.

*64 OPINION
BROOK, Chief Judge.

Case Summary
Appellant-respondent Lynda Newby appeals the involuntary termination of her parental rights to L.V.N., L.A.N., and D.N. We affirm.

Issues
Newby raises two issues on appeal, which we restate as follows:
I. Whether Newby was denied her fundamental right to due process; and
II. Whether there was sufficient evidence to support the termination of Newby's parental rights to her three children.

*66 Facts and Procedural History
On January 12, 2001, following an emergency detention hearing, Newby's newborn child, L.V.N., was temporarily removed from her care because he tested positive for cocaine. L.V.N. was placed with his maternal grandmother, Rosetta Harlow. On March 12, 2001, the trial court issued an order, relating back to a dispositional hearing conducted on February 7, 2001, adjudicating L.V.N. to be a child in need of services ("CHINS"). During the dispositional hearing, the trial court ordered Newby to follow the recommendations of the Boone County Division of Family and Children ("BCDFC") as they related to drug usage to accomplish the goal of reunification. Newby was also offered a variety of family services including the following: (1) home-based services from Home Team Advantage; (2) an intensive outpatient drug/alcohol program with Meridian Health Group; (3) the WIC program; (4) a visiting nurse; and (5) random drug screens.
On March 21, 2001, L.V.N. was reunited with his parents. By that time, Newby had remarried L.V.N.'s father and both Newby and her husband had clean drug tests. However, by the first week of April, both parents failed to submit to required drug screens.
On December 26, 2001, the trial court adjudicated Newby's other two minor children, L.A.N., and D.N., to be CHINS. Newby was in the Marion County Jail at the time of the dispositional hearing, but was represented by counsel. During the next several months, Newby continued to be in and out of jail, but did participate in the jail's drug program. However, following her release from jail on May 7, 2002, Newby tested positive for cocaine on May 22, 2002. Newby subsequently disappeared, and her whereabouts were unknown to the BCDFC for several months. Newby also failed to comply with the trial court's order to submit to weekly drug screens on multiple occasions.
On August 19, 2002, the BCDFC filed its petition seeking the involuntary termination of Newby's parent-child relationship with all three children. On August 26, 2002, the trial court ordered the initial hearing on the termination petition to be held on September 4, 2002. In its order, the trial court directed BCDFC to provide Newby with a copy of the termination petition as well as the trial court's order setting a hearing date.
Although it believed Newby to be somewhere in Indianapolis, Indiana, BCDFC was unable to locate Newby's address or whereabouts; consequently, on September 19, 2002, BCDFC filed a petition with the court requesting that summons be made by publication pursuant to Indiana Trial Rule 4.13. On September 25, 2002, the trial court granted BCDFC's motion for summons by publication and rescheduled the initial hearing for November 13, 2002.
The initial hearing on termination commenced on November 13, 2002. Newby appeared by video link from the Boone County Jail. During the initial hearing, the trial court reviewed the termination petition, outlined the consequences of termination to Newby, advised Newby of her rights under Indiana Code Sections 31-32-2-3 and -5 and determined that Newby denied the allegations contained in the termination petition. In its subsequent order, dated November 27, 2002, the trial court scheduled a factfinding hearing to be held on January 15, 2003. On December 19, 2002, following a telephone conference with several parties, including Newby's attorney and a BCDFC family case manager, the factfinding hearing was rescheduled for January 22, 2003.
*67 The fact-finding hearing commenced on January 22, 2003; however, the presentation of evidence was not completed. The factfinding hearing was thereafter reconvened on several subsequent days until finally completed on February 26, 2003. Newby appeared in person at the factfinding hearing and was represented by counsel. On March 24, 2003, the trial court entered its judgment terminating the parent-child relationship of Newby with L.V.N., L.A.N., and D.N. This appeal ensued.

Discussion and Decision

I. Due Process
Newby first contends that she was denied her fundamental right to due process during the termination hearing. Specifically, Newby asserts that the trial court failed to conduct the termination hearing in a timely manner in violation of Indiana Code Section 31-35-2-6 and that this error "constituted a procedural irregularity which substantially increased the risk of error with respect to the termination of parental rights in that [Newby] was deprived some degree of notice as to what conduct on her part could lead to the termination of those rights." Appellant's Br. at 11. We find this argument unpersuasive.
When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause. J.T. v. Marion County Office of Family and Children, 740 N.E.2d 1261, 1264 (Ind.Ct. App.2000), trans. denied. Although due process has never been precisely defined, the phrase embodies a requirement of "fundamental fairness." Id. Our legislature has enacted an interlocking statutory scheme governing CHINS proceedings and the involuntary termination of parental rights proceedings. A.P. v. Porter County Office of Family and Children, 734 N.E.2d 1107, 1112 (Ind.Ct.App.2000), trans. denied. This statutory scheme is designed to protect the rights of parents in raising their children while allowing the State to effect its legitimate interest in protecting children from harm. Id. The CHINS and involuntary termination statutes are not independent of each other. Id. Indiana Code Section 31-35-2-2 clearly states that although termination proceedings are distinct from CHINS proceedings, an involuntary proceeding is "governed by the procedures prescribed by" the CHINS statutes contained in Indiana Code Article 31-34. Id.
Contrary to Newby's assertions on appeal, Indiana law does not mandate that a hearing be held within ninety days after a termination petition is filed. In fact, Indiana law does not impose any specific time requirement for the setting of an initial hearing or factfinding hearing unless a party specifically requests a hearing. See Ind.Code § 31-35-2-6; see also Ind.Code §§ 31-34-10-2, -8, -9, and 11-1, -2. Only after a party specifically requests a hearing does a ninety-day deadline for the commencement of a hearing become applicable. Ind.Code § 31-35-2-6.
The record reveals that BCDFC filed its petition for the involuntary termination of Newby's parental rights on August 19, 2002. However, BCDFC's petition did not contain a request for a hearing. Likewise, Newby did not request a hearing. Thus, Indiana Code Section 31-35-2-6 was inapplicable. The trial court, however, on its own initiative and in accordance with Indiana Code section 31-34-10-2, ordered an initial hearing to be held on September 4, 2002. *68 The initial hearing eventually commenced on November 13, 2002.[1]
While it is true that procedural irregularities in a proceeding may be of such import that they deprive a parent of procedural due process with respect to the termination of his or her paternal rights, see A.P., 734 N.E.2d at 1112-13, we find no such procedural irregularity here. As stated earlier, the ninety-day time limit contained in Indiana Code Section 31-35-2-6 was not applicable under the facts of this case. Additionally, the record reveals that at the initial hearing, the trial court reviewed the termination petition, outlined the consequences of termination to Newby, advised Newby of her rights under Indiana Code Sections 31-32-2-3 and -5, and determined that Newby denied the allegations contained in the termination petition. The trial court thereafter set a date for the fact-finding hearing. Thus, the trial court did exactly what it should, as prescribed by Indiana Code Sections 31-34-10-4 to -6, and 31-34-11-1. We further note that Newby attended the initial hearing, via video link from the Boone County Jail, and was represented by counsel at the factfinding hearings.
Based on the foregoing, we cannot conclude that Newby's due process rights were violated. Newby simply does not provide, nor do we find, any evidence of a lack of "fundamental fairness" in the proceedings below. Additionally, Newby has failed to provide any cogent argument or point to any evidence in the record supporting her claim that she was denied some degree of notice as to what conduct on her part could lead to termination of her parental rights. To the contrary, the record reveals, and the trial court's termination order reflects, that prior to the termination proceedings, the trial court repeatedly advised Newby that she must refrain from drug use and follow BCDFC's recommendations in order to be reunified with her children. We therefore find no error.[2]

II. Sufficiency of Evidence
Newby next asserts that there was insufficient evidence to support the trial court's decision to terminate her parental rights. Newby argues that there was "overwhelming" evidence at trial that the conditions that existed at the time of the filing of the termination petition had changed. Specifically, she states that the evidence shows that she made a decision to change her life a month before the termination petition was filed and began working as a confidential informant to assist law enforcement officers capture drug dealers. She also claims that she became drug-free, was under the supervised and continued care of physicians, had established a stable residence, and was employed at the time of the fact-finding hearing. Newby therefore concludes that the trial court's determination that the conditions that led to the removal of her children would probably not be remedied was not supported by the evidence and that its order terminating her parental rights must be reversed.
The Fourteenth Amendment of the United States Constitution protects the traditional rights of parents to establish a home and raise their children. Matter of M.B., 666 N.E.2d 73, 76 (Ind.Ct.App. *69 1996), trans. denied. Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their responsibilities as parents. Egly v. Blackford County Dep't of Pub. Welfare, 592 N.E.2d 1232, 1234 (Ind. 1992). This includes situations not only where the child is in immediate danger of losing his life, but also where the child's emotional and physical development is threatened. Id. The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. In re N.B., 731 N.E.2d 492, 494 (Ind.Ct.App.2000), trans. denied. When determining an appropriate disposition of a petition to terminate parental rights, the rights of a parent are subordinated to the child's best interests. See Ind.Code § 31-35-2-4; see also Wardship of J.C. v. Allen County Office of Family and Children, 646 N.E.2d 693 (Ind.Ct.App.1995), trans. denied.
In deference to the trial court's unique position to assess the evidence, we set aside the judgment terminating a parent-child relationship only if it is clearly erroneous. In re L.S., 717 N.E.2d 204, 208 (Ind.Ct.App.1999), trans. denied. Thus, we do not reweigh evidence or determine credibility of witnesses, but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. Egly, 592 N.E.2d at 1235.
To effect the involuntary termination of a parent-child relationship, BCDFC was required to prove the following elements with regard to L.V.N., L.A.N., and D.N.:
(A) the children had been removed from the parent for at least six (6) months under a dispositional decree;
(B) there was a reasonable probability that:
(i) the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the children;
(C) termination is in the best interests of the children; and
(D) there is a satisfactory plan for the care and treatment of the children.
See Ind.Code § 31-35-2-4(b)(2) and -8; see also Matter of M.B., 666 N.E.2d at 76. The statute is written in the disjunctive. Thus, it requires the trial court to find only one of the two requirements of subparagraph (B) by clear and convincing evidence. See In re L.S., 717 N.E.2d at 209. The trial court found that the continuation of the parent-child relationship posed a threat to the well-being of the children. Standing alone, this finding satisfied the requirements of subparagraph (B). However, there is also sufficient evidence to support the trial court's determination that a reasonable probability existed that the conditions resulting in the removal of the children were unlikely to be remedied.
To determine whether the conditions that resulted in the child's removal will be remedied, the trial court must look to the parent's fitness at the time of the termination proceeding. In re N.B., 731 N.E.2d at 494. In addition, the court must look at the patterns of conduct in which the parent has engaged to determine if future changes are likely to occur. Id. When making its determination, the trial court can reasonably consider the services offered to the parent and the parent's response to those services. Id.
BCDFC presented evidence from several witnesses that demonstrated Newby had made little progress in correcting her *70 problems. BCDFC investigator/caseworker Kamilla Aeschliman's testimony made clear that from the time BCDFC became involved in the case, Newby repeatedly failed to attend scheduled case conferences and hearings, regularly refused to participate in court-ordered drug screens, was in and out of jail several times, and completely severed contact with BCDFC for months at a time. Aeschliman further testified that she had multiple conversations wherein Newby stated she would, "get it together" and requested BCDFC services. Tr. at 136. However, Aeschliman stated that Newby never followed through with her promises.
BCDFC caseworker Mason Cooper's testimony echoed Aeschliman's account of Newby's relationship with BCDFC. Cooper testified that since the time of BCDFC's initial involvement in January, 2001, Newby had refused to participate in forty-two court ordered drug tests and had eight drug screens with positive or diluted results. Cooper further testified that BCDFC's recommendation to terminate Newby's parental rights to L.V.N., L.A.N., and D.N. was based on its ongoing concerns regarding Newby's continued drug use, her failure to cooperate and maintain regular contact with the BCDFC, her failure to have a positive role in the children's lives since the BCDFC became involved in January of 2001, and her failure to successfully complete any drug or alcohol program.
Joe Plewa, Executive Director of Meridian Health Group, also testified at the fact-finding hearing. Plewa, who administered the drug treatment program at the Boone County jail, had an opportunity to assess and counsel Newby on several occasions during her various periods of incarceration. Plewa testified that during his formal assessment, he learned that Newby had participated in several different drug treatment programs including: (1) a forty-five-day stay at Richmond State Hospital, (2) "detox" programs at Fairbanks and St. Vincent's Hospitals, and (3) another program while in jail prior to his involvement with her case. Tr. at 442. Plewa further testified that, in his experience, Newby had been unable to stop using cocaine for any period longer than a few months. He also stated that Newby had developed a treatment cycle where, while she was in a program in a structured environment, she was able to begin the recovery process. However, when Newby was back in the community and out of the structured environment, she would relapse. Based on his treatment of Newby and his experience with chronic relapse, Plewa opined that in order to break this cycle, Newby would need approximately two years in a residential treatment program. He further testified that Newby's addiction was a chronic, progressive illness, and that without such a treatment program, her future was bleak. The record further reveals that Newby admitted she had used cocaine as recently as October of 2002, and that she had not had a drug screen since December 27, 2002. In addition, at the time of the factfinding hearing, Newby was not participating in any drug rehabilitation program and had pending charges in Boone County for perjury.
Based on our standard of review, we cannot say that the trial court's decision was clearly erroneous. Given Newby's unfortunate reoccurring behavior, the BCDFC sufficiently established by clear and convincing evidence that as of the time of the fact-finding hearing, there was no reasonable probability that the circumstances that led to the children's removal from Newby's care would be remedied. Newby's arguments to the contrary simply *71 constitute an invitation to reweigh the evidence, and this we may not do.
Affirmed.
BAKER, J., and SHARPNACK, J., concur.
NOTES
[1] The record reveals that the commencement of the initial hearing was delayed, at least in part, because BCDFC was unable to determine Newby's whereabouts after diligent efforts. Service of notice was eventually accomplished via publication.
[2] In light of our holding that Newby's constitutional right to due process was not violated, her argument that said violation was exacerbated because of her alleged diminished mental capacity is moot.