IN THE MATTER OF: D.S., S.E., and S.L.E., Minors,
CHER STEWARD, Appellant-Respondent,
v.
LAKE COUNTY DEPARTMENT OF CHILD SERVICES, Appellee-Petitioner.
No. 45A04-0705-JV-279.
Court of Appeals of Indiana.
October 17, 2007.
DEIDRE L. MONROE, Public Defender's Office, Gary, Indiana, ATTORNEY FOR APPELLANT.
EUGENE VELAZCO, Lake County Office of Family & Children, Gary, Indiana, ATTORNEY FOR APPELLEE.
DONALD WRUCK, Dyer, Indiana, ATTORNEY FOR SPECIAL ADVOCATE.

MEMORANDUM DECISION
FRIEDLANDER, Judge.
Cher Steward appeals the involuntary termination of her parental rights as to her children, D.S., S.E., and S.L.E. (collectively, the children). She presents the following restated issue for review: Was sufficient evidence presented to support the termination of her parental rights?
We affirm.
After midnight on November 28, 2003, officers from the Hammond Police Department were dispatched to Steward's apartment in response to a neighbor's call that she had heard a baby crying for about forty-five minutes. Police arrived and had to force their way into the apartment because Steward was not home and her oldest child, three-year-old D.S., could not unlock the deadbolt. Inside the apartment, police also found Steward's one-year-old twins, S.E. and S.L.E. One of the babies was laying on a bed, while the other had fallen and was wedged between the bed and the wall. Police also found marijuana in the residence. After over an hour, Steward had yet to come home, so the children were taken to the police station and the Lake County Department of Child Services (the DCS) was notified. Steward arrived at the police station around 2:10 a.m. and was arrested. The children were taken into custody by the DCS and placed at Carmelite Home for Girls (Carmelite).
A detention hearing was held and an order was entered on December 2, 2003, in which the court concluded the children should remain in temporary custody of the DCS. The court ordered the provision of services for Steward, including a drug/alcohol evaluation and recommended treatment, individual counseling, parenting classes, and home-based services. On February 4, 2004, the children were found to be CHINS following an uncontested hearing. Steward was ordered to fully participate in the services, treatment, and/or supervision specified in the case plan.
Beginning in December 2003, services were provided through Apostolic Youth and Family Services (Apostolic). Steward initially complied with the case plan and was able to regain custody of the children in January 2004. Her early success, however, was short-lived. Steward's therapist at Apostolic, Toni Hickey, testified that her compliance became sporadic by May 2004. By that point, Steward was often unavailable for services and drug screens. She also tested positive for marijuana on more than one occasion. Steward's DFC case manager, Ken Van Scoyk, similarly testified regarding the same period, "it was going pretty good, and then all of a sudden, she started to slip away". Transcript at 44.
By October 2004, Steward was having little contact with Hickey, living in a shelter and not working at the time, and still using marijuana. Further, she had been involved in several contacts with law enforcement due to problems with her twins' father, Fredrick Edmond.[1] Hickey recommended inpatient treatment, as Steward had not successfully completed drug treatment at Apostolic. While Steward had improved in some areas over the year, Hickey testified that she was still demonstrating the same pattern of instability and drug use as before she started services. Hickey stopped working with Steward near the end of 2004, when Steward entered an inpatient drug treatment program.
In November 2004, Scoyk referred Steward to the Transitions program for inpatient drug treatment. She left the program after only one day, abandoning D.S. at the facility. D.S. was, therefore, placed back at Camelite. At the time, the twins were being cared for by Edmond's mother, which Steward had arranged prior to entering the Transitions program. D.S. was eventually placed with his paternal aunt, Kewatha Lang. The children were never returned to Steward's care after their placement with paternal relatives at the end of 2004.
Steward was subsequently referred to the Women's Journey program in South Bend. She successfully completed the first phase of the inpatient drug treatment program. During the second phase, however, Steward used marijuana while on a weekend pass. She tested positive for marijuana upon her return to the facility. After she left the Women's Journey program in April 2005, Steward was "not compliant at all" with the case plan. Id. at 52. She did not regularly make contact with Scoyk, did not provide him with contact information, and did not perform drug screens.
Soon thereafter, Steward initiated a dangerous encounter with Edmond. She had a friend drive her over to Edmond's house after an altercation with him and his girlfriend. Steward proceeded to break out the back window of Edmond's vehicle. Edmond then exited his house with a gun and began shooting at Steward and her pregnant friend. Steward's friend and her unborn baby were killed during the incident.[2]
In July 2005, the CHINS case was transferred to a new case manager, Gloria Person. At that time, Steward had not visited with the children for at least six to nine months. She did not have her own residence and was not making herself available for drug screens on a regular basis. She also tested positive for marijuana. Steward admitted to Person that she had a problem with marijuana and that she had relapsed around Father's Day.
At a hearing in August 2005, the trial court ordered the DCS to proceed with termination. Thereafter, Steward continued to have sporadic contact with Person and failed to substantially comply with the case plan. She tested positive for marijuana on December 12, 2005. The DCS filed the instant petition to involuntarily terminate parental rights on December 27, 2005. At that point, the DCS ceased offering services to Steward. The court entered a no-contact order between Steward and the children in July 2006.[3]
The termination hearing was held on January 25, 2007. Steward's case managers and service providers testified consistently regarding her sporadic compliance with the case plan since May 2004, as set forth above. Person opined that termination was in the best interests of the children due to Steward's substantial noncompliance with services over a significant period of time, her instability, and her inability to remain drug free. Person further testified that, after all this time, the children need a "permanent, nurturing, safe situation". Id. at 70. Finally, Person indicated that the children's current caregivers wished to adopt and that the children were bonded with their respective caregivers in a nurturing, safe environment.
Steward testified at the termination hearing and acknowledged that between November 2003 and September 2006 she had been using marijuana, despite treatment and services. She admitted marijuana had destroyed her life and indicated she would "now comply" with the case plan if given the chance. Id. at 125. Steward claimed she had been clean about four months and was going to NA meetings. She further testified she had made arrangements for suitable housing and had been employed for about a month (though she admitted she had been out of work for the previous six months). February 2006. D.S.'s therapist recommended that visits cease, as they were causing the child to have behavioral and emotional problems.
Following the termination hearing, the trial court entered an order granting the involuntary termination of Steward's parental rights as to the children.[4] Steward now appeals. Additional facts will be provided below as necessary.
While parents have a traditional right, protected by the Fourteenth Amendment of the United States Constitution, to establish a home and raise their children, the interests of parents are not absolute and must be subordinated to the children's best interests. In re D.D., 804 N.E.2d 258 (Ind. Ct. App. 2004), trans. denied. Courts can order the involuntary termination of parental rights when parents are unable or unwilling to meet their parental responsibilities. Id. The goal in terminating parental rights is not to punish parents but to protect children. Id.
When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. Bester v. Lake County Office of Family & Children, 839 N.E.2d 143 (Ind. 2005). We consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. We will not set aside a trial court's order to terminate parental rights unless it is clearly erroneous. In re A.H., 832 N.E.2d 563 (Ind. Ct. App. 2005).
Ind. Code Ann. § 31-35-2-4(b)(2) (West, PREMISE through 2007 Public Laws approved and effective through April 8, 2007) provides that a petition to terminate a parent-child relationship involving a CHINS must allege that:
(A) one (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding under Ind. Code § 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.
The State is required to establish these allegations by clear and convincing evidence. Egly v. Blackford County Dep't of Pub. Welfare, 592 N.E.2d 1232 (Ind. 1992). Clear and convincing evidence need not reveal that `the continued custody of the parents is wholly inadequate for the child's very survival.'" Bester v. Lake County Office of Family & Children, 839 N.E.2d at 148 (quoting Egly v. Blackford County Dep't of Pub. Welfare, 592 N.E.2d at 1233). Rather, clear and convincing evidence that the child's emotional and physical development are threatened is sufficient to establish that termination is in the child's best interests. See Bester v. Lake County Office of Family & Children, 839 N.E.2d 143.
Steward concedes that the children have been removed from her care for a sufficient period of time to satisfy the first statutory requirement. She argues, however, that insufficient evidence was presented by the State to support the remaining statutory requirements. We will address each of the challenged elements in turn.
We initially find that there is abundant evidence in the record to support the trial court's determination that a reasonable probability existed that the conditions resulting in the children's removal or the reasons for continued placement outside Steward's home were unlikely to be remedied. In determining whether the conditions that led to a child's placement outside the parent's home will likely be remedied, the trial court should assess the parent's ability to care for the child as of the date of the termination proceeding and take into account any evidence of changed conditions. See In re A.H., 832 N.E.2d 563; In re K.S., 750 N.E.2d 832 (Ind. Ct. App. 2001). The trial court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. In re A.H., 832 N.E.2d 563.
Steward's argument with respect to this element boils down to a claim that "she complied in totality with her case plan" and has "changed her life." Appellant's Brief at 11. The record, however, clearly reveals otherwise. As set forth in detail above, the testimony of the case managers and service providers consistently reveals that Steward's compliance became sporadic by May 2004 and that she did not substantially comply with the case plan, despite services being offered through December 2005. In particular, Steward has failed to successfully complete drug treatment and remain drug free, has failed to regularly visit with the children, and has failed to maintain stable housing. Her own testimony reveals that marijuana has destroyed her life and that she continued to use marijuana between November 2003 and September 2006. In light of her pattern of instability and drug use throughout the CHINS and termination proceedings, Steward's claim that she is a changed person and would "now comply" if given the chance rings hollow. Transcript at 125. We reject Steward's invitation to reweigh the evidence, as the evidence favorable to the judgment establishes a reasonable probability that the conditions resulting in the children's removal or the reasons for continued placement outside Steward's home were unlikely to be remedied.
Because of our determination above, we need not reach the issue of whether there is a reasonable probability that the continuation of the parent-child relationships poses a threat to the well being of the children. See In re L.V.N., 799 N.E.2d 63 (Ind. Ct. App. 2003) (noting that I.C. § 31-35-2-4(b)(2)(B) is written in the disjunctive and, therefore, only one of the two requirements of subparagraph (B) need to be established by clear and convincing evidence).
Therefore, we turn to Steward's claim that there is insufficient evidence to establish termination is in the best interest of the children. In this regard, Steward argues without citation to the record:
[T]he trial court failed to address the pain and suffering that these children had to endure when the visitation with their mother was stopped. Obviously, D.S., S.E., and S.L.E. will experience severe mental anguish, when he was told that he would not see his mother again [sic], especially, D.S. Therefore, is mental abuse in the best interest of the D.S., S.E., and S.L.E.[?] The children's best interest was most definitely not served by this ruling.
Appellant's Brief at 12.
By her own admission, Steward had not visited with the twins for more than one year prior to the termination hearing and had rarely visited with them before her last visit. Moreover, while it appears she visited with D.S. somewhat more often, the evidence reveals these visits were causing him to experience behavioral and emotional problems. D.S.'s therapist, Amy Douglas, testified that D.S. loved Steward but was confused about the separation and needed certainty in his life. Douglas opined that D.S.'s behavior could very well improve if the court granted the petition to terminate because he would finally be able to attain permanency with Lang (his aunt and foster mother of over two years, with whom he has developed a strong bond).
In sum, there is no merit to Steward's unsupported claim that the children will suffer mental abuse as a result of the termination of parental rights. The children have lingered in the system for over three years while Steward dabbled with services, failed to remain drug free, and failed to maintain regular contact with them. The children need and deserve stability and permanency now. Further, the current case manager, Person, testified that termination was in the best interests of the children.
Finally, with respect to the twins, Steward argues the State failed to establish a satisfactory plan for their care and treatment following termination. She asserts: "It is difficult to believe that the paternal grandmother is a better parent than Ms. Steward, when her son is currently incarcerated for 110 years." Appellant's Brief at 11. Steward further asserts that because the twins' grandmother, LaWanda Johnson, did not appear at the termination hearing, "who knows of her plan for the twins." Id.
The plan for a child following termination "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." In re B.D.J., 728 N.E.2d 195, 204 (Ind. Ct. App. 2000). Here, in the event of termination, the DCS case manager (Person) testified the plan was for the children to remain with and be adopted by their current caregivers. With respect to the twins, Person specifically testified that Johnson wished to adopt them and that they were strongly bonded with Johnson. Person explained that the twins were "doing really well in [Johnson's] home" and that she had no doubt Johnson would provide them with a "loving, stable, caring, drug free home". Transcript at 69. This constitutes sufficient evidence that a satisfactory plan exists for the care and treatment of the twins.
The evidence sufficiently supports the trial court's decision to terminate the parent-child relationship between Steward and the children.
Judgment affirmed.
RILEY, J., and SHARPNACK, J., concur.
NOTES
[1] During one altercation with Edmond, Steward left the twins at Edmond's home. Soon thereafter, Edmond turned the twins over to the DCS, and they were once again placed at Carmelite. The twins were returned to Steward a week later.
[2] Edmond was convicted of voluntary manslaughter and attempted murder. He was sentenced to 110 years in prison on September 19, 2006.
[3] Even before that time, Steward had not regularly visited with the children. In fact, she last visited with the twins in October 2005. Lang testified Steward had last visited with D.S. in November 2005 and
[4] The parental rights of D.S.'s putative father, DeAngelo Lang, and the twins' father, Edmond, were also terminated. Lang and Edmond are not parties to this appeal.