## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 27 2015, 8:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

Abigail R. Recker
Deputy Attorney General

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.H. and J.W., | October 27, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 71A03-1503-JT-110 |
| v. | Appeal from the St. Joseph Probate Court |
| Indiana Department of Child Services, | The Honorable James Fox, Judge |
| *Appellee-Plaintiff* | Trial Court Cause Nos. 71J01-1302-JT-13 71J01-1302-JT-14 71J01-1311-JT-78 |

**Altice, Judge.**

## Case Summary

[1] T.H. (Mother) and J.W. (Father) (collectively, Parents) appeal the involuntary termination of their parental rights to J.L.W. (Child 1), J.L.H. (Child 2), and J.H. (Child 3) (collectively, the Children). Parents challenge the sufficiency of the evidence supporting the probate court's order terminating their rights.

[2] We affirm.

## Facts & Procedural History

[3] Mother and Father are the parents of three children: Child 1, born in December 2010, Child 2, born in November 2011, and Child 3, born in January 2013. The family first came to the attention of the Department of Child Services (DCS) shortly after Child 1's birth due to a report that Child 1's newborn meconium screening had been positive for marijuana. In January 2011, Parents entered into a program of informal adjustment, under the terms of which both Mother and Father agreed to take random drug screens, among other things. Child 1 remained in their custody at that time.

[4] In October 2011, DCS filed a request for unsatisfactory discharge of the informal adjustment and a petition alleging that Child 1 was a child in need of services (CHINS). DCS alleged that Mother had continued to test positive for marijuana and that she had tested positive for cocaine on more than one occasion. DCS also noted that Mother was pregnant and due to give birth in

November. The probate court granted DCS's request to discharge the informal adjustment and set a fact-finding hearing for the CHINS petition.

[5] In November 2011, Mother gave birth to Child 2, whose newborn meconium screening was also positive for THC. DCS filed a CHINS petition with respect to Child 2, but because Mother tested negative for all controlled substances shortly after Child 2's birth, Child 1 and Child 2 were left in the home at that time. In January 2012, however, Mother tested positive for cocaine, and DCS filed an emergency motion to remove Child 1 and Child 2 from Mother and Father's custody. Following a detention hearing, the probate court granted the motion and Child 1 and Child 2 were placed in foster care. A fact-finding hearing was held on January 31, 2012, at which Mother and Father admitted the allegations against them and Child 1 and Child 2 were adjudicated CHINS and continued in foster care. The probate court entered a dispositional order on February 16, 2012, pursuant to which Mother and Father were ordered to participate in counseling, visit with the children weekly, keep in touch with DCS, and submit to random drug screens.

[6] On October 17, 2012, the probate court suspended Parents' visitation because they continued to test positive for drugs. The court ordered that visitation would resume as previously ordered when Mother and Father each provided three consecutive negative drug screens. Mother did not satisfy this requirement, so her visits were never reinstated. Father eventually provided negative drug screens as required, and his visits were reinstated on January 6, 2013. However, Father tested positive for marijuana on January 17, 2013, and

positive for marijuana and cocaine on January 31, 2013. He also refused a drug screen on January 24, 2013, and he failed to appear for scheduled drug screens on February 6, 12, and 14, 2013. As a result, DCS filed a motion to again suspend Father's visitation, which the probate court granted on February 20, 2013.

[7]     Meanwhile, Mother gave birth to Child 3 in January 2013, at which time both Child 3 and Mother tested positive for marijuana. As a result, DCS filed a CHINS petition with respect to Child 3, who was removed from Mother's custody before being discharged from the hospital. Child 3 was adjudicated a CHINS and placed in foster care with her two older siblings. Mother was ordered to participate in the same services ordered in the CHINS case involving the two older children.

[8]     On February 25, 2013, DCS filed petitions to terminate Parents' rights to Child 1 and Child 2. On March 14, 2013, DCS filed a motion requesting that services for Parents be stopped because Parents were not in compliance and were "seemingly uninterested in any service that has been referred." *Appellee's Appendix* at 84. The probate court granted the motion on April 10, 2013. DCS filed a petition to terminate Parents' rights to Child 3 on November 4, 2013. An evidentiary hearing was held on the termination petitions on January 27, 2015.

[9]     At the hearing, DCS presented evidence that Mother had failed to complete services as ordered. Specifically, she had failed to complete substance abuse

counseling, tested positive for marijuana and cocaine on several occasions, and canceled or failed to show up for drug screens multiple times. Additionally, before Mother's visits were suspended, her attendance at weekly supervised visitation with the Children had been sporadic. Moreover, DCS had concerns about Mother's behavior during the visits because she would yell at the children, threaten to "pop" them, and be on her phone instead of interacting with them. *Transcript* at 44. DCS also presented evidence that Mother had lived in multiple residences throughout the CHINS and termination proceedings and that she was unemployed at the time of the termination hearing. Additionally, Mother testified that she had been arrested for a misdemeanor in December 2013, spent time in jail, and remained on probation at the time of the termination hearing. Mother also had two pending criminal cases at the time of the termination hearing.

[10] With respect to Father, DCS presented evidence concerning his ongoing contact with the criminal justice system. Father was convicted of burglary in 2010 and placed on probation for two years. While on probation, Father committed criminal trespass and a drug possession offense. Father served a sentence in the Department of Correction before being transferred to a work release center in March 2014, and then home detention. Father's visitation with the Children was reinstated in August 2014, but visits ceased when Father was arrested in October 2014 for violating the terms of his home detention. Father remained incarcerated at the time of the termination hearing, and he was also facing a new theft charge in another county at that time.

At the conclusion of the evidentiary hearing, the probate court took the matter under advisement. On February 27, 2015, the probate court issued its order terminating Parents' parental rights to Children. Parents now appeal. Additional facts will be provided as necessary.

## Discussion & Decision

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the probate court's unique position to assess the evidence, we will set aside its judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.,* 717 N .E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied.* Thus, if the evidence and inferences support the decision, we must affirm. *Id.*

The probate court entered findings in its order terminating Mother's and Father's parental rights to Children. When the probate court enters specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind.

1996). A judgment is clearly erroneous only if the findings do not support the court's conclusions or the conclusions do not support the judgment thereon. *Id.*

[14] We recognize that the traditional right of parents to "establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.,* 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* Although parental rights are of constitutional dimension, the law provides for the termination of these rights when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.,* 892 N.E.2d 144, 149 (Ind. Ct. App. 2008). In addition, a court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding the termination. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *Id.*

[15] Before an involuntary termination of parental rights may occur in Indiana, DCS is required to allege and prove by clear and convincing evidence, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services[.]

Ind. Code § 31-35-2-4(b)(2).

[16] On appeal, Parents argue that the evidence is insufficient to support the involuntary termination of their parental rights. Specifically, Parents challenge the probate court's findings as to subsection (b)(2)(B)(i) and (ii).[1] We note that DCS needed to establish only one of the three requirements of subsection (b)(2)(B) by clear and convincing evidence before the probate court could terminate parental rights. *See In re L.V.N.*, 799 N.E.2d 63 (Ind. Ct. App. 2003). Here, the probate court found that DCS presented sufficient evidence to satisfy two of those requirements, namely, that there is a reasonable probability the conditions resulting in the Children's removal or continued placement outside Parents' care will not be remedied and that the continuation of the parent-child relationship poses a threat to the Children's well-being. *See* I.C. § 31-35-2-4(b)(2)(B)(i), (ii). We focus our inquiry on the requirements of subsection (b)(2)(B)(i)—that is, whether there was sufficient evidence to establish a reasonable probability that the conditions resulting in the Children's removal or continued placement outside Parents' care will not be remedied.

---

[1] Parents do not challenge the court's determination with respect to the other requirements that must be proven by clear and convincing evidence before a court can terminate parental rights. Specifically, Parents do not challenge the court's determination as to I.C. § 31-35-2-4(b)(2)(A)(i-iii), that termination is in the Children's best interest, or that there is a satisfactory plan for the care and treatment of the Children.

[17] In making such a determination, the court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *Id.* In making this determination, courts may consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The court may also consider the parent's response to the services offered through DCS. *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. Moreover, the failure to exercise visitation demonstrates a "lack of commitment to complete the actions necessary to preserve [the] parent-child relationship." *Id.* (quoting *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002)) (alteration in original).

[18] We first address Mother's arguments. Mother argues that the evidence presented concerning her drug screens was insufficient to support the termination of her parental rights because no actual drug test results were admitted into evidence and because the record is not clear as to how many drug screens were taken or when they were administered. Mother's argument in this regard is a request to reweigh the evidence, which we will not do on appeal. All three of the Children tested positive for marijuana at birth, and Mother

admitted at the termination hearing that she had tested positive for marijuana on multiple occasions. There was also evidence presented that Mother frequently cancelled or failed to show up for drug screens and that she tested positive for cocaine on more than one occasion. After her visits were suspended in October 2012, Mother never provided the three consecutive negative drug screens necessary to have visitation restored, and she has not seen the Children since that time. Mother testified at the termination hearing that she had not used marijuana in a "couple months." *Transcript* at 153. Despite her obvious issues with substance abuse, Mother never completed substance abuse counseling as ordered. Although Family Case Manager Eric Fikes testified that Mother had given negative drug screens in the last few months prior to the termination hearing, the probate court was within its discretion to give greater weight to Mother's habitual pattern of substance abuse, failure to engage in services, and housing and income instability throughout the CHINS proceedings. *See K.T.K. v. Ind. Dep't of Child Servs., Dearborn Cnty. Office*, 989 N.E.2d 1225, 1234 (Ind. 2013) (noting that a termination court is free to disregard efforts made shortly before termination and weigh a parent's history of conduct prior to those efforts more heavily).

[19] Father's arguments on appeal also constitute requests to reweigh the evidence. Specifically, Father argues that his only obstacle to caring for the Children is his incarceration. Father then directs our attention to his own testimony that he was not guilty of the pending theft charge and that he would be released the following month. The probate court was not obligated to credit Father's

testimony in this regard. The record reveals that Father was incarcerated for the majority of the underlying CHINS case, and he was facing yet another criminal charge at the time of the termination hearing. Moreover, when Father was not incarcerated, his visits with the Children were twice suspended due to positive drug screens. Although Father eventually completed substance abuse treatment while incarcerated and his visits with the Children generally went well, the probate court was entitled to attribute greater weight to Father's established pattern of criminal activity, drug use, and instability.

[20] We have no doubt that Mother and Father both genuinely love the Children. The Children, however, cannot wait forever. They need stability and permanency now, and Parents have unfortunately been unable to provide such an environment. For all the reasons set forth above, the probate court's conclusion that there is a reasonable probability that the conditions resulting in the Children's removal or continued placement outside Parents' care will not be remedied is supported by sufficient evidence.

[21] Judgment affirmed.

[22] Riley, J., and Brown, J., concur.