## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Adam C. James
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J. C.,<br>*Appellant-Defendant,*<br><br>　　　　v.<br><br>Indiana Department of Child Services,<br>*Appellee-Plaintiff.* | March 2, 2016<br><br>Court of Appeals Case No.<br>73A04-1507-JT-806<br><br>Appeal from the Shelby Superior Court<br><br>The Honorable Raymond K. Apsley, Judge<br><br>The Honorable Chris Monroe, Senior Judge<br><br>Trial Court Cause No.<br>73D01-1501-JT-1 and 73D01-1501-JT-2 |

**Altice, Judge.**

## Case Summary

[1] J.C. (Father) appeals the involuntary termination of his parental rights to his children. Father challenges the sufficiency of the evidence supporting the termination of his rights.

[2] We affirm.

## Facts & Procedural History

[3] Father and A.C. (Mother)[1] were married and had two children together, Pa.C. (Daughter), who was born in 2005, and Pe.C. (Son), who was born in 2006 (collectively, the Children). On September 10, 2013, the Department of Child Services (DCS) filed a petition alleging Daughter was a Child in Need of Services (CHINS) because she had been diagnosed with Type I diabetes and celiac disease, and Mother and Father had failed to ensure that her medical needs were met. Specifically, they had failed to take her to medical appointments, keep weekly blood sugar logs as directed by her physician, or supply her school with necessary medical supplies. An initial hearing was held on September 13, 2013, at which Mother and Father denied the allegations. Shortly thereafter, Father was arrested. On October 11, 2013, Daughter was

---

[1] Mother consented to the termination of her parental rights and does not participate in this appeal. Accordingly, we limit our recitation of the facts to those relevant to Father's appeal.

adjudicated a CHINS upon Mother's admission. The Children were not removed from the home at that time.

[4] On October 21, 2013, DCS filed a petition alleging that Son was a CHINS because Father was still incarcerated and Mother was addicted to drugs. On November 7, 2013, the trial court issued an order requiring Mother to participate in services, but allowed the Children to remain in her care. The next day, Mother was arrested for theft. Because both Mother and Father were incarcerated, the Children were placed in foster care.

[5] Father was released from jail and began participating in home-based services with counselor Becky Holland in November 2013. At a hearing on December 9, 2013, Father admitted that the Children were both CHINS, and they were so adjudicated. Father was ordered, among other things, to maintain stable housing and income, submit to random drug screens, participate in home-based counseling and case management, and complete parenting, substance abuse, and domestic violence assessments and follow all recommendations.

[6] For several months thereafter, Father continued home-based services with Holland, who supervised visits with the Children and assisted Father with finding employment, securing housing, and understanding Daughter's health conditions. In August 2014, Father's supervised visitation was suspended because he had missed counseling appointments. Holland agreed with the suspension of Father's visitation because of "the stress both children [were] experiencing due to the instability of their parents and lack of progress." *Exhibit*

*Volume, Father's Exhibit B* at 169. Home-based services were also terminated after Father missed three consecutive appointments with Holland.

[7] At the time DCS became involved, Father was on probation for class D felony theft. Father also had previous convictions for theft, resisting law enforcement, and domestic battery on Mother in the presence of a child under sixteen years old. On November 20, 2014, Father's probation was revoked and he was ordered to serve six months in the Department of Correction.

[8] On January 1, 2015, DCS filed petitions to terminate Mother's and Father's parental rights to the Children. Mother voluntarily relinquished her parental rights on February 20, 2015. The trial court held a hearing on the petition to terminate Father's parental rights on May 8, 2015. The trial court issued an order terminating Father's parental rights on June 12, 2015. Father now appeals. Additional facts will be provided as necessary.

**Discussion & Decision**

[9] When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside its judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.,* 717 N .E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied.* Thus, if the evidence and inferences support the decision, we must affirm. *Id.*

[10] The trial court entered findings in its order terminating Father's parental rights. When the trial court enters specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous only if the findings do not support the court's conclusions or the conclusions do not support the judgment thereon. *Id.*

[11] We recognize that the traditional right of parents to "establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.,* 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* Although parental rights are of constitutional dimension, the law provides for the termination of these rights when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.,* 892 N.E.2d 144, 149 (Ind. Ct. App. 2008). In addition, a court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding the termination. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *Id*.

[12] Before an involuntary termination of parental rights may occur in Indiana, DCS is required to allege and prove by clear and convincing evidence, among other things:

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services[.]

Ind. Code § 31-35-2-4(b)(2)(B). DCS must also prove by clear and convincing evidence that termination is in the best interests of the child. I.C. § 31-35-2-4(b)(2)(C).

[13] On appeal, Father argues that the evidence is insufficient to support the involuntary termination of his parental rights. Father first challenges the trial court's findings as to subsection (b)(2)(B)(i) and (ii). We note that DCS was required to establish only one of the three requirements of subsection (b)(2)(B) by clear and convincing evidence before the trial court could terminate parental rights. *See In re L.V.N.*, 799 N.E.2d 63, 69 (Ind. Ct. App. 2003). Here, the trial court found that DCS presented sufficient evidence to satisfy two of those requirements, namely, that there is a reasonable probability the conditions resulting in the Children's removal or continued placement outside Father's care will not be remedied and that the continuation of the parent-child

relationship poses a threat to the Children's well-being. *See* I.C. § 31-35-2-4(b)(2)(B)(i), (ii). We focus our inquiry on the requirements of subsection (b)(2)(B)(i)—that is, whether there was sufficient evidence to establish a reasonable probability that the conditions resulting in the Children's removal or continued placement outside Father's care will not be remedied.

[14] In making such a determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *Id.* In making this determination, the court may consider the parent's history of neglect and response to services offered through DCS. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *In re L.S.*, 717 N.E.2d at 210.

[15] Father's challenge to the trial court's finding that there is a reasonable probability that the conditions leading to the Children's removal and continued placement outside Father's care will not be remedied is nothing more than a request to reweigh the evidence. Father has a significant criminal history and he has been incarcerated repeatedly throughout the Children's lives. In

November 2014, shortly before the termination petitions were filed, Father's probation was revoked and he was ordered to serve six months in the Department of Correction. Father was still incarcerated at the time of the termination hearing in May 2015. It is well settled that "[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." *Castro v. Ind. Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006) (quoting *Matter of A.C.B.*, 598 N.E.2d 570, 572 (Ind. Ct. App. 1992)), *trans denied*. Additionally, Father has not demonstrated an ability to provide stable housing for the Children. During the CHINS proceedings, Father lived in multiple residences, including two relatives' homes, a motel, and two apartments.

[16]     As for Father's argument that he made significant progress in therapy, we note that Father's therapist testified that he made progress for a time, but that "things did seem to fall apart[.]" *Transcript* at 85. Similarly, Father's participation in home-based services with Holland was short-lived, and services were terminated when he began missing scheduled appointments in August 2014. Around the same time, Father's visitation was suspended because he had missed counseling appointments and failed to make progress in services. This evidence, taken as a whole, was more than sufficient to support the trial court's finding that there is a reasonable probability that the conditions leading to the Children's removal and continued placement outside Father's care will not be remedied.

[17] Father also challenges the trial court's conclusion that termination of his rights is in the Children's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). In so doing, the trial court must subordinate the interest of the parent to those of the child, and the court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *McBride*, 798 N.E.2d at 199.

[18] In support of his argument that DCS failed to prove that termination is in the Children's best interests, Father argues that he loves the Children and the Children love him. We do not doubt the truth of this claim, but in this case, it is simply not enough. Throughout these proceedings, Father has been in and out of jail and unable to provide stable and adequate housing and supervision. He had made no lasting progress toward these goals at the time of the termination hearing. The Children cannot wait forever; they need stability and permanency now. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010) (explaining that "a child's need for permanency is an important consideration in determining the best interests of a child"). For all of these reasons, we conclude that the evidence presented was sufficient to support the trial court's finding that termination was in the Children's best interests.

[19] Judgment affirmed.

[20] Robb, J. and Barnes, J., concur.