**In re the Matter of the Involuntary Termination of the Parent–Child Relationship of Q.B., S.B., Sh.B., T.B., Minor Children and Their Father, Bobby Bynum, Appellant–Respondent,**

v.

## MARION COUNTY DEPARTMENT OF CHILD SERVICES, Appellee–Petitioner,

**Child Advocates, Inc., Appellee-(Guardian ad-Litem).**

No. 49A04–0701–JV–49.

Court of Appeals of Indiana.

Aug. 17, 2007.

Publication Ordered Sept. 11, 2007.

Steven J. Halbert, Carmel, IN, Attorney for Appellant.

Elizabeth Filipow, Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Bobby Bynum appeals the termination of his parental rights. We affirm.

### Issue

The restated issue is whether the termination of Bynum's parental rights was obtained in violation of his due process rights.

### Facts

Q.B., S.B., Sh.B., and T.B. range in age from four to eleven years old. Nakisha Dismuke and Bynum are the children's parents. Dismuke has three other children by different fathers who also reside in the home. On September 13, 2004, the Marion County Department of Child Services ("MCDCS") filed a petition alleging

Q.B., S.B., Sh.B., and T.B. and their siblings were seriously endangered and requested they be declared children in need of services ("CHINS"). Q.B., S.B., Sh.B., and T.B. and their siblings were removed from the care of Bynum and Dismuke at that time.

The CHINS court entered a participation decree on January 20, 2005, and ordered Bynum to attend parenting classes, participate in home based counseling, complete a substance abuse treatment program, and submit to random drug testing. The court ordered Bynum to notify his caseworker of any changes in address or phone number within five days of the change. The court also ordered Bynum to contact his caseworker every week, in person, by letter, or by phone. At a CHINS placement hearing held April 21, 2005, the CHINS court suspended visitation as the parents were not participating in the services as ordered. Supervised visitation was reinstated in June of 2005.

Social worker Desiree Crooke provided home therapy to both parents and the children. Initially, Crooke was working toward the goal of reuniting the family. The children were placed back in the home in January 2006, but only briefly. Bynum was arrested following an incident at the children's school where he got into a verbal argument with the principal. The children were again in the home in May 2006, until an allegation of sexual abuse was made by one of the younger siblings against the oldest sibling, who is not a party to this case. The children were removed again, citing a lack of supervision. This record reveals the children have been taken from this home three times in two years.

The court set a termination hearing for October 4, 2006. MCDCS family case manager Katie Chamness sent a letter on August 11, 2006, to Bynum at the Marion County Jail facility at 40 South Alabama Street in Indianapolis. This letter informed Bynum that October 4, 2006, was the trial date for the termination hearing. It also directed that he must attend the hearing and that the court could hold a trial without him. The letter included a telephone number to contact Chamness and the name and telephone number of the appointed public defender. The letter was returned because Bynum was apparently not at that facility. After contacting the jail to confirm Bynum's whereabouts, Chamness re-sent the letter to another facility at 730 East Washington in Indianapolis. Chamness received no response from Bynum following this letter. Transport for Bynum from the penal facility to the October 4, 2006 hearing was not approved. Bynum's attorney requested that the hearing be reset to allow Bynum's participation. The hearing was reset for November 30, 2006.

On November 1, 2006, Chamness searched the Indiana Department of Correction web site and discovered Bynum had been released on October 27, 2006. Chamness contacted Dismuke and left a message inquiring as to Bynum's whereabouts. Chamness did not receive any information from Dismuke in response to this inquiry. On November 14, 2006, Dismuke attended a placement hearing and Chamness inquired again, this time in person, about Bynum's whereabouts. Dismuke claimed that following his release from jail, she told Bynum he could no longer live with her and she had not heard from him since that time. Chamness did not attempt to contact Bynum again as she did not have any known address to direct her correspondence. At the time of her testimony on November 30, 2006, Chamness had no knowledge of Bynum's whereabouts following the October 27, 2006 release. Contrary to court order, Bynum

had not contacted her at all in October or November of 2006 to keep her apprised of his whereabouts.

On November 30, 2006, the court held a termination hearing. Dismuke appeared with her public defender and signed consents for adoption of the children. Bynum did not appear. His public defender, Stephen McNutt, appeared and moved for a continuance of the trial. McNutt informed the court that his last contact with Bynum was while Bynum was incarcerated in mid-September. Counsel stated that he sent a letter to another penal facility in early October and received no response, but would not elaborate on whether the letter contained specific notice of the hearing date, citing attorney client privilege. Although the State conceded that it did not give Bynum specific notice of the November 30, 2006 hearing date, it maintained notice was impossible because Bynum's whereabouts were unknown. The State further argued Bynum was given notice of termination proceedings generally by the earlier letter giving notice of the October 4, 2006 date. Based on that letter, the State argued Bynum had sufficient information, namely his attorney's name and telephone number, to find out the status of his case. The guardian ad litem objected to the motion to continue and argued it was in the best interest of the children to proceed with the termination hearing.

Evidence presented at the hearing illustrated that Bynum was unable to provide his children with a stable and safe environment. The oldest child in the home, not a biological child of Bynum's, testified that Bynum was physically abusive to him. Chamness testified that Bynum's alcohol abuse prevented him from fully engaging in the reunification process and fully providing for the children. If they remained in Bynum's care, Q.B., S.B., Sh.B., and T.B. would be at risk to develop the same behavioral and emotional problems exhibited by the two oldest children, not biological children of Bynum's. These problems resulted from abuse, neglect, and lack of stability and prevented these children from being in foster placement. Chamness concluded that: "Mr. Bynum is unable to support and protect his children at this time due to his multiple arrests for substance abuse issues...." Tr. p. 82.

The trial court ordered the termination of Bynum's parental rights on December 21, 2006. This appeal followed.

### Analysis

■ Bynum argues that MCDCS did not comply with applicable statutory requirements regarding notice of the termination hearing and this non-compliance violated his due process rights. The applicable notice statute requires the entity that files a petition to terminate parental rights to send notice to the parents at least ten days prior to the termination hearing date. Ind.Code § 31–35–2–6.5(b). Because a termination proceeding is an in rem proceeding, the Indiana Rules of Trial Procedure govern. *In re A.C.*, 770 N.E.2d 947, 949 (Ind.Ct.App.2002). The statute, however, does not require compliance with Indiana Trial Rule 4, which governs service of process and includes a jurisdictional component. *In re C.C.*, 788 N.E.2d 847, 851 (Ind.Ct.App.2003), *trans. denied.* Service should be made in the best possible manner reasonably calculated to inform the respondent of the upcoming action. *Id.*

■ MCDCS provided Bynum notice that a termination proceeding regarding his four children was pending. The letter sent to the penal facility in August put Bynum on notice that a termination hearing would be held on October 4, 2006. The letter explicitly stated: "If you fail to attend the hearings, the court can hold the trial in your absence and issue an order

ending your relationship with your child." Tr. Ex. 1. That letter provided the names and phone numbers of the MCDCS case manager and the state appointed public defender. Apparently transport from the penal facility was not approved for the October 4, 2006 hearing, so Bynum's counsel moved to continue the hearing. The trial court reset the hearing for November 30, 2006.

The MCDCS case manager attempted to send another letter to Bynum on or about November 1, 2006. Following online searches of the Department of Correction, MCDCS discovered Bynum had been released on October 26, 2007. Bynum makes much of the fact that MCDCS did not attempt to locate and contact him for this hearing until early November. However, the statute requires ten days of notice. By this guideline, the MCDCS case manager was ahead of schedule. Earlier contact was not mandated.

Following her discovery that Bynum was no longer incarcerated, the case manager diligently tried to contact him. She realized a letter to the last known address would be ineffective, as Bynum had been released from jail. She contacted the mother of the children, Dismuke, on the telephone and questioned her in-person regarding Bynum's whereabouts. Dismuke told the case manager Bynum was no longer at her residence, so again, any letters sent to that address would be futile. Dismuke also claimed she had no knowledge of Bynum's whereabouts.

Through his own actions, Bynum had eluded MCDCS and his public defender. Bynum's whereabouts were completely unknown. He was under court order to inform his case manager of any changes of address or circumstance, yet he failed to maintain this necessary contact. Without this contact, Bynum did not even check on the status of his children. He had also met with his state appointed public defender in mid-September, yet did not maintain contact with him. This hearing did not sneak up on Bynum or come as a surprise. Rather, his case manager could not reach him because he was non-compliant with the court's order to maintain contact with her. The record also indicated he was not attentive to maintaining contact with his attorney. We find that under these circumstances, MCDCS's attempts at compliance with the statute were adequate because it was clear that sending notice to Bynum's last known address would be futile.

■■■ Regarding Bynum's due process claim, we have held that when the government seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process. *Lawson v. Marion County Office of Family & Children*, 835 N.E.2d 577, 580 (Ind.Ct.App.2005). "The Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding." *Id.* at 579. In a termination of rights proceedings, we must balance the following factors in assessing the nature of process: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *Id.* In doing so, we recognize that "although due process is not dependent on the underlying facts of the particular case, it is nevertheless flexible and calls for such procedural protections as the particular situation demands." *Id.* (citing *Thompson v. Clark County Div. of Family & Children*, 791 N.E.2d 792, 795 (Ind.Ct.App.2003), *trans. denied.*) (internal quotations omitted).

■■■ A parent's interest in maintaining a relationship with his or her children is

extremely high. *Id.* at 577. Yet we must balance this interest with the other factors. The State's interest in protecting the welfare of the children is significant. *Id.* Courts also must be aware of the costs, both tangible and intangible, of delaying the proceedings. *Id.* The guardian ad litem in this case objected to the continuance, stating, "we don't think it's in the best interest of the children to delay the DCS again...." Tr. p. 6. At the time of this hearing, the children had been removed from their home and in foster care for over two years. During that time, attempts had been made to reunite the family and to allow overnights stays with their parents, but each time the children were again removed. The continuance requested to delay the proceeding even further was caused by Bynum's own failure to keep others apprised of his whereabouts.

Bynum's rights were not fatally compromised because he was represented by counsel throughout the proceedings. Because Bynum was not in attendance, however, he was unable to testify. Still, his attorney cross-examined witnesses and had the opportunity to review and object to any evidence tendered by MCDCS and the guardian ad litem. In balancing the parental interests of Bynum with those of the State and keeping in mind the minimal risk of error created by the challenged procedure, we conclude that notice was adequate and the termination hearing proceedings did not violate Bynum's due process rights.

### Conclusion

Adequate notice was given in this case and Bynum's due process rights were not violated, especially considering that Bynum's whereabouts were unknown. We affirm.

Affirmed.

KIRSCH, J., and ROBB, J., concur.

### *ORDER*

On August 17, 2007, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Motion for Publication of Memorandum Decision. The Appellee states that this Court's opinion deals with procedural requirements in Termination of Parental Rights trials and involves a matter of substantial public importance, and therefore should be published.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Motion for Publication of Memorandum Decision is GRANTED, and this Court's opinion heretofore handed down in this cause on August 17, 2007, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

KIRSCH, ROBB, BARNES, JJ., concur.