## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2018, 10:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Noah T. Williams
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re Termination of the Parent-Child Relationship of

M.P. (Minor Child)

and

K.P. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

November 30, 2018

Court of Appeals Case No.
18A-JT-1462

Appeal from the Monroe Circuit Court

The Honorable Stephen R. Galvin, Judge

Trial Court Cause No.
53C07-1707-JT-606

**Altice, Judge.**

## Case Summary

[1] K.P. (Mother) appeals following the termination of her parental rights to M.P. (Child). Mother presents two issues for our review:

> 1. On remand from this court, did the trial court abuse its discretion in granting the Department of Child Services's (DCS) motion to reopen the evidence over Mother's objection?
>
> 2. Did DCS present sufficient evidence to establish that it complied with the statutorily-mandated ten-day notice of the fact-finding hearing on the petition to terminate Mother's parental rights?

[2] We affirm.

## Facts & Procedural History

[3] Mother and R.P. (Father)[1] are the parents of Child, born August 25, 2010. On October 30, 2015, the Monroe County Sheriff's Department received an anonymous report concerning drug use at Mother's home. The following day, October 31, 2015, a Family Case Manager (FCM) with DCS made an unannounced visit to the home and observed that Mother was impaired while caring for Child and had track marks on her arms. The FCM also observed a six-inch knife within reach of Child, that the home was in disarray, and that

---

[1] Father's parental rights to Child were also terminated, but he does not participate in this appeal. Herein, we will set forth the facts only as they relate to termination of Mother's parental rights.

there was a bottle of Narcan, a glass pipe, and a needle in a dresser in Mother's bedroom. Mother admitted that she used marijuana, oxycodone, and heroin. Child was removed from Mother's care that day.

[4] On November 4, 2015, DCS filed a petition alleging that Child was a child in need of services (CHINS). The trial court adjudicated Child a CHINS on January 14, 2016. On February 8, 2016, at the conclusion of a dispositional hearing, the trial court entered a dispositional order requiring Mother to complete a substance abuse assessment and follow all recommendations, participate in individual and group counseling and homebased case management, submit to random drug screens, and participate in supervised visits with Child. Mother was also required to permit access to her home, maintain suitable and stable housing and a legal and stable source of income, and keep in contact with DCS at lease once per week.

[5] Mother completed the substance abuse evaluation and was diagnosed with major depressive disorder, posttraumatic stress disorder, severe opioid and marijuana use disorder, and moderate alcohol use disorder. It was recommended that Mother complete a thirty-day inpatient treatment program to be followed by individual counseling to address her mental health diagnosis and group counseling for treatment of her substance abuse issues.

[6] In its May 2, 2016 case review order, the court found that Mother was not complying with services, had not enhanced her ability to fulfill her parental

obligations, and had not fully cooperated with DCS. Specifically, the court found:

> [Mother] has not been regularly participating in substance abuse outpatient treatment and individual counseling at Centerstone. Inpatient treatment has been recommended by her therapist. [Mother] was admitted to Stepping Stones treatment facility on March 21, 2016. She was unsuccessfully discharged the next day for breaking facility rules. She then entered the Women's Bureau Transitions program on March 29, 2016. She left the program against staff advice on April 12, 2016. She tested positive for heroin and morphine on March 2, 2016. She has failed to screen when requested on multiple occasions.

*Exhibits Vol. III* at 30. In the court's order approving the permanency plan, dated November 30, 2016, the court found:

> [M]other has not complied with the dispositional orders. [Mother] continues to use controlled substances. She tested positive for amphetamine, Xanax, and Soma on September 26, 2016. She tested positive for THC on September 29 and October 27, 2016. She missed drug screens on August 1, November 18 and November 23, 2016. [Mother] has been participating in IOP. Until recently, her participation in individual therapy was sporadic. When she has appeared for therapy sessions, she minimized her conduct and blamed others. However, she recently has begun to make progress in therapy. [Mother] has a prescription for Suboxone. [Mother] has not demonstrated that she [can] maintain sobriety and care for [Child].

*Id*. at 36.

[7]     In its permanency review order of March 23, 2017, the court found that Mother was generally complying with the dispositional orders, but that she had yet to complete the court-ordered services. The court noted that Mother was visiting with Child and generally cooperating with DCS. On April 26, 2017, Mother was granted unsupervised visits with Child. However, by June 14, 2017, Mother's visitation was modified back to supervised visitation.

[8]     In a July 17, 2017 permanency review order, the trial court found that Mother was visiting Child, but that she had not otherwise complied with the court's dispositional order. The court noted that Mother continued to test positive for prescribed Suboxone and that she had recently relapsed. Mother also continued to see Father and encouraged Child to lie about it. On June 18, 2017, Mother and Father were arrested for theft.

[9]     On July 28, 2017, DCS filed a petition to terminate Mother's parental rights. On August 10, 2017, the court set an initial hearing on the termination petition and sent notice of the hearing to Mother at her home on "W. Marlene Dr." *Appendix Vol. II* at 14. Mother appeared at the initial hearing by telephone. The court entered a denial on Mother's behalf and appointed her a public defender. The court also set a pretrial conference for September 18, 2017 and a factfinding hearing for September 25, 2017. At the pretrial conference, the court granted the "parties[']" request to reset the factfinding hearing to October 30, 2017.[2] *Id.*

---

[2] The chronological case summary indicates that Mother was not present for the pretrial conference.

at 3. The court held the factfinding hearing as scheduled. Mother did not appear personally, but her attorney was present. At the beginning of the hearing, Mother's counsel requested a continuance given Mother's absence and stated, "Um, doubt if DCS has given them notice. But, maybe." *Transcript Vol. II* at 5. The rest of counsel's statement was inaudible due to construction work outside the building. DCS objected to the continuance, arguing, "the notices were provided more than 10 days in advance. … It was set about a month ago, um, parents were aware of today's hearing." *Id*. at 6. The court denied Mother's motion to continue and proceeded with the factfinding hearing concerning termination of Mother's parental rights.

[10] During the factfinding hearing, FCM Branan Neeley testified that Mother had not completed inpatient treatment, had not successfully completed the Stepping Stones program, and had continued to use drugs. He further testified that Mother attended 36 out of 87 individual therapy sessions and 70 out of 138 group therapy sessions. Additionally, he noted that Mother was offered 116 drug screens, of which she missed 22. FCM Neeley also noted that Mother attended visits with Child 139 out of 161 times, but recently her participation had declined. A court appointed special advocate (CASA) testified that Child had bonded and was very affectionate with her pre-adoptive parents and that she believed adoption was the "ideal" plan for Child. *Id*. at 20. On November 2, 2017, the court entered its order terminating Mother's parental rights.

[11] On December 4, 2017, Mother filed a notice of appeal under Cause No. 53A05-1712-JT-2830. In her brief, Mother asserted that her due process rights had

been violated because DCS had not given her adequate notice of the date and time of the termination hearing.[3]  Instead of filing a brief in response, DCS filed a motion for remand, agreeing that the record lacked proof of compliance with the ten-day notice requirement of Ind. Code § 31-35-2-6.5.  This court granted the motion on April 6, 2018 and remanded for further proceedings.

[12]  On April 18, 2018, DCS filed with the juvenile court a motion to reopen the evidence.  The court held a hearing on the motion on May 3, 2018.  Over Mother's objection, the court granted DCS's motion, finding that this court's order for remand was for the purpose of "giving [DCS] an opportunity to demonstrate that there was compliance with Indiana Code 31-35-2-6.5." *Transcript Vol. II* at 28.  The hearing continued, and DCS was permitted to introduce evidence only as to whether Mother was afforded notice.  At the conclusion of the hearing, the court took the matter under advisement.

[13]  On May 16, 2018, the trial court entered an order terminating Mother's parental rights to Child.  With regard to notice, the court found:

> On October 17, 2017, [DCS] sent Notices to [Mother] at [her] last known address[] (Exhibit #1 from the hearing on May 3, 2018).  The Notices comply with the requirements of I.C. 31-35-2-6.5.  [FCM] Neeley testified that he sent [Mother]'s Notice to her last known address at 2457 W. Marlene Dr. … [Mother] testified that Mr. Neeley was lying under oath and that she had provided Mr. Neeley with a different address prior to the Fact-

---

[3] As with the instant appeal, Mother did not argue that the evidence was insufficient to terminate her parental rights.

Finding hearing. She further testified that she thought the Fact-Finding hearing was happening "a few days in the future." The Court accepts Mr. Neeley's testimony as truthful. [Mother] is not a credible witness. The Court does not accept her testimony as truthful.

*Appendix Vol. II* at 8. Mother filed the instant appeal. Additional facts will be provided as needed.

## Discussion & Decision

### Motion to Reopen the Evidence

[14] Mother argues that the court abused its discretion in granting DCS's motion to reopen the evidence. She asserts that this court's order remanding the case made no mention of reopening the evidence. She also claims that she was greatly prejudiced by the court's decision to permit DCS to present additional evidence as to whether she was afforded notice of the termination hearing such that "her substantive due process rights under the Fourteenth Amendment to build and maintain a family have been compromised." *Appellant's Brief* at 11. We disagree.

[15] "[W]hen the government seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process." *Q.B. v. Marion Cnty. Dep't of Child Servs.*, 873 N.E.2d 1063, 1067 (Ind. Ct. App. 2007). These include not only compliance with the various statutory requirements of the Indiana Code, but also the fundamental constitutional requirements prohibiting "'state action that deprives a person of life, liberty, or property

without a fair proceeding.'" *In re A.B.*, 922 N.E.2d 740, 744 (Ind. Ct. App. 2010) (quoting *In re B.J.*, 879 N.E.2d 7, 16 (Ind. Ct. App. 2008), *trans. denied*). Among the protections written into our statutes, I.C.§ 31-35-2-6.5 provides, in relevant part, that "[a]t least ten (10) days before a hearing on a petition or motion under this chapter … the person or entity who filed the petition to terminate the parent-child relationship … shall send notice of the review to … [t]he child's parent." This court has held "[c]ompliance with the statutory procedure of the juvenile code is mandatory to effect termination of parental rights." *In re T.W.*, 831 N.E.2d 1242, 1246 (Ind. Ct. App. 2005). Although statutory notice "is a procedural precedent that must be performed prior to commencing an action," it is not "an element of plaintiff's claim." *In re H.K.*, 971 N.E.2d 100, 103 (Ind. Ct. App. 2012). Rather, failure to comply with statutory notice is a defense that must be asserted. *Id.*

[16] In *H.K.*, this court considered on the merits whether DCS complied with the statutory notice requirement of I.C. § 34-35-2-6.5. Finding no evidence in the record that indicated DCS had complied with the notice statute, the court concluded the "most appropriate remedy" was to remand to the trial court with instructions that the court conduct a hearing to determine if DCS properly provided the requisite notice to the mother of the date and time of the final hearing. *H.K.*, 971 N.E.2d at 103.

[17] Although at a different procedural junction, the same remedy was employed here. This court granted DCS's motion to remand "for further proceedings" on the issue of whether Mother received the requisite notice of the termination

hearing. In this regard, we find the court on remand properly interpreted this court's order as providing DCS with the opportunity to demonstrate compliance with I.C. § 31-35-2-6.5. Such an opportunity required that the court hold a hearing and that the evidence be reopened so DCS could present evidence as to whether Mother was afforded the requisite notice of the termination hearing. Indeed, given that DCS essentially conceded that the record was devoid of evidence that DCS provided the requisite notice, remand for further proceedings would have been pointless if the trial court could not reopen the evidence. We therefore conclude that the trial court did not err in granting DCS's motion to reopen the evidence.

## Sufficiency

Mother argues that, even if it was not error for the trial court to reopen the evidence, DCS did not present sufficient evidence that she was afforded the requisite notice of the termination hearing. Once the defense of lack of notice is placed in issue, DCS bears the burden of proving compliance with the notice statute. *H.K.*, 971 N.E.2d at 103.

On remand, DCS presented testimony from FCM Neeley that notice was sent to Mother's last known address more than ten days prior to the termination hearing. When challenged as to what he knew to be Mother's last known address, FCM Neeley maintained that he knew Mother's last address to be on West Marlene Drive. DCS also provided copies of the notice itself, which was addressed to Mother at the West Marlene Drive address and dated October 17,

2017. The termination hearing was held on October 30, 2017. To refute DCS's evidence, Mother testified that FCM Neeley was lying under oath and claimed that she provided him with a different address prior to the termination hearing.

[20] The conflicting evidence necessarily required the court to make a credibility determination, and the trial court expressly determined in its order terminating Mother's parental rights that it found FCM Neely's testimony truthful and that Mother was not credible. We will not second-guess the court in this regard. DCS presented evidence that notice of the termination hearing was sent to Mother at her last known address more than ten days prior to the termination hearing. This is sufficient for purposes of I.C. § 31-35-2-6.5. *See H.K.*, 971 N.E.2d at 103 (holding that while formal service of process is not required, DCS is required to send notice of a termination hearing to the parent's last known address at least ten days before the hearing); *In re C.C.*, 788 N.E.2d 847 (Ind. Ct. App. 2003) (holding notice of the final termination hearing was not defective under I.C. § 31-35-2-6.5 where DCS established it mailed such notice to father's last known address, even though DCS knew father did not reside at that location).

[21] Judgment affirmed.

Najam, J. and Pyle, J., concur.