**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 14 2013, 5:36 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
DCS Marion County Local Office
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION )
OF THE PARENT CHILD RELATIONSHIP OF: )
)
M.B. (Minor Child), )
)
and )
)
B.B. (Mother), )
)
Appellant-Respondent, )
)
vs. )    No. 49A05-1212-JT-649
)
THE INDIANA DEPARTMENT OF )
CHILD SERVICES, )
)
Appellee-Petitioner. )

APPEAL FROM THE MARION SUPERIOR COURT – JUVENILE DIVISION
The Honorable Marilyn Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1208-JT-030733

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

B.B. ("Mother") appeals the termination of her parental rights to her daughter, M.B. Mother challenges the trial court's conclusion that the conditions resulting in M.B.'s removal from her care will not be remedied. But Mother has a history of drug abuse and was incarcerated on drug-related charges at the time of the termination hearing. She had also failed to maintain contact with her daughter, communicate with authorities involved in the termination case, and participate in the termination proceedings. Mother's rights to her three older children have also been terminated. This is sufficient evidence to support the trial court's decision to terminate Mother's rights.

Mother also argues, belatedly, that her due-process rights were violated at an earlier stage in the proceedings involving M.B. But Mother raises these arguments for the first time on appeal; thus, they are waived. Waiver aside, her due-process arguments are not persuasive. We affirm.

## Facts and Procedural History

Mother gave birth to M.B. in July 2011.[1] Mother has a history of drug use and M.B. had health issues at birth, including drug-withdrawal symptoms and feeding difficulties that required a feeding tube. M.B. received specialized care in the neonatal

---

[1] M.B.'s biological father does not participate in this appeal; he consented to M.B.'s adoption.

intensive-care unit for the first two months of her life. Hospital employees told Mother that she needed to learn how to control M.B.'s feeding tube and that they would contact child-protective services if Mother did not complete the necessary training. Mother participated in some training, but she was forceful with M.B. and became frustrated when she could not control the feeding tube. Mother never completed the entire training.

Mother was also required to identify two alternate caregivers for M.B. due to her special medical needs. Mother first identified M.B.'s maternal grandmother. But M.B.'s maternal grandmother was not a suitable caregiver; she worked sixty hours per week and did not complete the feeding-tube training. Mother suggested another caregiver for M.B., but that individual was also unsuitable; the man was seventy-two years old, had a history of strokes and limited mobility, and was physically unable to complete the feeding-tube training. Although Mother suggested additional caregivers, they were all unsuitable.

By the end of September, M.B. was ready to be discharged from the hospital, but no one had completed the medical training necessary to care for her. Hospital employees contacted the local Marion County Department of Child Services ("MCDCS"). MCDCS took custody of M.B. and placed her in foster care. MCDCS made a number of referrals for Mother for services such as substance-abuse assessments, random drug screens, home-based therapy, and home-based case management. Mother never participated in any of these services. Tr. p. 25-26, 32.

In September 2011, MCDCS filed a petition alleging that M.B. was a child in need of services ("CHINS"). Mother appeared at an initial hearing and denied the allegations, and the trial court appointed an attorney to represent Mother. Mother did not appear at a

pre-trial hearing two months later, and her attorney told the trial court that she had been unable to make contact with Mother. The court scheduled a fact-finding hearing for January 2012. Mother did not appear at the fact-finding hearing and her attorney said Mother had not responded to her letters. The court allowed counsel to withdraw. At the conclusion of the hearing, the trial court adjudicated M.B. a CHINS. The trial court ordered Mother to appear in court to receive service referrals.

Mother was incarcerated on drug-related charges in February or March 2012. Mother was first incarcerated at the Marion County jail, but she was later transferred to the Morgan County jail. The CHINS proceedings continued, but Mother did not contact MCDCS or appear at a permanency review hearing in August 2012. The court approved a permanency plan of adoption for M.B.

Meanwhile, M.B.'s foster-care placement had changed, and she was living with Mother's cousin, R.L. M.B. thrived in R.L.'s home. She no longer needed a feeding tube, and she received occupational therapy to help develop healthy eating skills. She was developing normally and was bonded to R.L. and the other members of the family. R.L. hoped to adopt M.B.

In August 2012, MCDCS filed a petition to terminate Mother's parental rights. Mother did not appear at the initial hearing on the termination petition, but the trial court appointed an attorney for Mother. Mother also did not attend the evidentiary hearing on the termination petition in November, but her attorney was present.

At the hearing, MCDCS presented additional evidence regarding Mother's substance-abuse issues.[2] Before M.B.'s birth, Mother had been addicted to heroin, and during her pregnancy, Mother tested positive for methadone, marijuana, and cocaine. At the time of the hearing, Mother was still incarcerated. The MCDCS caseworker assigned to the case, Chatarra Johnson, recommended termination of Mother's parental rights. Johnson said that Mother had never demonstrated an ability to care for M.B. and had not addressed her substance-abuse issues. *Id.* at 27-28. Johnson confirmed that M.B. was well cared for in her foster home and had developed a bond with her foster family. *Id.* at 29. The guardian ad litem ("GAL") assigned to the case, Chris Crowder, also recommended terminating Mother's rights, saying that M.B. was happy and healthy and that her foster family could provide a permanent home where M.B.'s emotional and physical needs would be met. *Id.* at 37-38.

At the end of September, the trial court entered its order with findings terminating Mother's parental rights. Appellant's App. p. 14-16.

Mother now appeals.

### Discussion and Decision

On appeal, Mother argues that her due-process rights were violated at the CHINS stage. She also challenges the sufficiency of evidence underlying the trial court's decision to terminate her parental rights.

### I. Mother's Due Process Rights

---

[2] DCS admitted a number of exhibits with this information. Mother's attorney did not object to the admission of these exhibits, *see* Tr. p. 4, and Mother does not challenge their admission on appeal.

Mother argues that her due-process rights were violated at the CHINS stage because M.B. was adjudicated a CHINS without notice to Mother and because the trial court ordered her to appear in court to receive services, rather than ordering services at the time of the CHINS disposition. Appellant's Br. p. 16-17. Mother did not raise any challenge to the CHINS proceedings at the termination stage; instead, she raises her due-process argument for the first time on appeal.

The State must satisfy the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it seeks to terminate the parent-child relationship. *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 375 (Ind. Ct. App. 2006) (citation omitted), *trans. denied*. "Due process requires notice, an opportunity to be heard, and an opportunity to confront witnesses." *Id.* Before an action affecting a party's interest in life, liberty, or property protected by the Due Process Clause proceeds, the State, at a minimum, must provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Id.* Any procedural irregularities in a CHINS proceeding may be of such significance that they deprive a parent of procedural due process with respect to the termination of his or her parental rights. *Id.* Nevertheless, a parent may waive a due-process claim in a CHINS or termination proceeding by raising that claim for the first time on appeal. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 194-95 (Ind. Ct. App. 2003); *see also In re K.S.*, 750 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2001) (by raising issue for first time on appeal, mother waived due-process claim that trial court violated her rights in failing to

6

follow statutory requirements governing permanency hearings, case plans, and dispositional orders).

Mother had a court-appointed attorney throughout the termination proceedings but never raised a CHINS due-process claim. Because she does so for the first time on appeal, she has waived her constitutional challenge. *See McBride*, 798 N.E.2d at 194-95. Wavier aside, Mother's claims have no merit. She first argues that she was denied due process when M.B. was adjudicated a CHINS without notice to her. But Mother invited any error of which she now complains. The doctrine of invited error provides that a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct. *C.T. v. Marion Cnty. Dep't of Child Servs.*, 896 N.E.2d 571, 588 (Ind. Ct. App. 2008) (citation omitted).

The record shows that Mother appeared at the initial CHINS hearing and signed the original rights-advisement form. Appellant's App. p. 28-29. Mother then failed to respond to letters sent to her by the attorney representing her in the CHINS case. By failing to communicate with counsel despite knowledge of the ongoing CHINS proceedings, Mother has invited the alleged error of which she now complains, and invited error is not reversible error. *Id*. (No reversible error where father was absent from termination hearing but was represented by his attorney; "in failing to respond to his attorney's letters or to communicate with his attorney prior to the termination hearing, despite his actual knowledge of the hearing, [father] has invited the alleged error of which he now complains.").[3]

---

[3] Citing Indiana Code section 31-34-19-10, Mother also states that the trial court must accompany its dispositional decree with written findings and conclusions concerning the child's needs and a parental

7

Mother also argues that she was denied due process because the trial court ordered her to appear in court to receive services, rather than ordering services at the time of the CHINS disposition. Because she never appeared in court, the trial court never ordered services. But we have previously explained that "the provision of services is not a requisite element of our parental rights termination statute, and thus even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal." *In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000). Mother therefore cannot attack the termination order based on the fact that she was not provided services in the underlying CHINS case. This Court has also made clear that a parent may not "sit idly by without asserting a need or desire for services" and then successfully argue on appeal that she was denied services to assist her with parenting. *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000). But that is exactly what happened here. DCS offered Mother services after the initial CHINS filing, but she refused to participate in those services. And even if the trial court had erred by not ordering services for Mother at disposition, Mother fails to show how she was harmed by the trial court's actions. If Mother wished to receive services, she could have simply appeared in court—but she never did. We find no error here.

## II. Termination of Parental Rights

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934

---

participation plan. Appellant's Br. p. 18. But that requirement was met here; the trial court concluded that M.B. was a CHINS based on the evidence in the record and indicated that Mother could receive services by appearing in court. *See* Petitioner's Exh. 6. To the extent Mother also implies that the trial court did not comply with Section 31-34-19.6.1, she does not explain how the trial court erred or how this alleged error harmed her. *See* Appellant's Br. p. 18. Thus, we find no error here.

8

N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty issues.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Indeed[,] the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb Cnty. Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). Nevertheless, parental rights are "not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights." *Id.* (citing *In re D.D.*, 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004), *trans. denied*).

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (citation omitted). Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Here, the trial court made specific findings and conclusions in its termination order. When a trial court enters specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *In re A.B.*, 888 N.E.2d 231, 235 (Ind. Ct. App. 2008) (citation omitted), *trans. denied*.

In Indiana, before parental rights may be involuntarily terminated, the State is required to allege and prove, among other things:

(B)	that one (1) of the following is true:

    (i)	There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii)	There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii)	The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)	that termination is in the best interests of the child; and

(D)	that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). In addition, the State has the burden of pleading and proving each element of Indiana Code section 31-35-2-4(b) by "'clear and convincing evidence'" before the trial court can involuntarily terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2). On appeal, Mother challenges the sufficiency of the evidence supporting the trial court's judgment as to subsection (B) of the termination statute detailed above. *See* I.C. § 31-35-2-4(b)(2)(B).

Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. The trial court therefore had to find only that one of the three requirements of subsection 2(B) had been met before terminating Mother's parental rights. *In re L.V.N.*, 799 N.E.2d 63, 69 (Ind. Ct. App. 2003). Nevertheless, the trial court found sufficient evidence had been presented to satisfy the evidentiary requirements of subsections 2(B)(i) and 2(B)(ii). Because we find it dispositive, we address only whether the evidence shows that there is a reasonable probability that the conditions resulting in the child's removal or continued

10

placement outside Mother's care will not be remedied. *See* Ind. Code § 31-35-2-4(b)(2)(B)(i).

When making this determination, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re I.A.*, 903 N.E.2d 146, 154 (Ind. Ct. App. 2009) (citations omitted). The court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *Id.* Similarly, courts may consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, and failure to provide support. *Id.* The trial court may also consider the services offered to the parent and the parent's response to those services, as evidence of whether conditions will be remedied. *Id.* Specific instances of a parent's character, including evidence regarding previous termination of parental rights, is also admissible evidence in a termination proceeding. *In re D.G.*, 702 N.E.2d 777, 780 (Ind. Ct. App. 1998).

The purpose of terminating parental rights is not to punish the parent but to protect the children involved. *In re D.B.*, 942 N.E.2d 867, 872 (Ind. Ct. App. 2011) (citing *In re K.S.*, 750 N.E.2d at 832). The involuntary termination of parental rights is the most extreme sanction a court can impose on a parent because termination severs all of a parent's rights to his or her children. *Id.* (citing *In re R.H.*, 892 N.E.2d 144, 149 (Ind. Ct. App. 2008)). "Termination of parental rights is therefore intended as a last resort, available only when all other reasonable efforts have failed." *Id.*

11

In determining that there is a reasonable probability that the conditions resulting in the child's removal or continued placement outside Mother's care will not be remedied, the trial court cited Mother's substance-abuse issues, her failure to participate in any services to address those issues, her failure to participate in the CHINS or termination proceedings, and her failure to maintain contact with M.B. or MCDCS. Appellant's App. p. 15. The court also noted that Mother's parental rights to her three other children have been terminated. *Id.*

Mother argues that there was insufficient evidence of her fitness to care for M.B. at the time of the termination hearing because no one had visited her in jail to see if she had participated in any services there. Appellant's Br. p. 11-12. She argues that the burden of proving changed conditions was therefore improperly placed on her. Mother is correct that DCS, not the parent, carries the burden of proving that the parent is unfit to care for her child at the time of the termination hearing. But we do not think this requires DCS to disprove an argument that Mother never made. Put differently, MCDCS did not have to prove that Mother had not completed services when Mother herself never claimed to have done so.

And Mother's participation in services—or lack thereof—was only one aspect of the trial court's reasoning. There was other evidence of Mother's fitness to care for M.B. at the time of the hearing, and it supported termination of her rights: Mother has a history of drug abuse and was incarcerated on drug-related charges at the time of the termination hearing, making her physically unable to parent M.B. Other than the initial CHINS hearing, Mother did not attend any of the CHINS or termination proceedings, and she did

12

not maintain contact with M.B. or MCDCS. Notably, Mother does not argue that she was unable to attend court proceedings or communicate with her daughter or MCDCS. Finally, her parental rights to her three other children have been terminated.

Under these circumstances, we cannot say that the trial court erred in determining that MCDCS had established that the conditions resulting in M.B.'s removal would not be remedied. Because we conclude that the evidence was sufficient to support the court's determination, we need not consider whether the continuation of the parent-child relationship poses a threat to M.B.'s well-being as MCDCS has satisfied the requirements of Indiana Code section 31-35-2-4(b)(2)(B) by clear and convincing evidence.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.