# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 23 2016, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| N.H., <br> *Appellant-Defendant,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Plaintiff.* | May 23, 2016 <br><br> Court of Appeals Case No. 49A04-1510-JT-1627 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn Moores, Judge <br><br> The Honorable Larry Bradley, Magistrate <br><br> Trial Court Cause No. 49D09-1505-JT-280 and 49D09-1505-JT-281 |

**Altice, Judge.**

## Case Summary

N.H. (Father) appeals the involuntary termination of his parental rights to his children. He raises the following issues on appeal:

> 1. Did the trial court abuse its discretion in denying his motion for a continuance?
>
> 2. Was the trial court's order terminating his parental rights supported by sufficient evidence?

We affirm.

## Facts & Procedural History

Father and K.S. (Mother)[1] have two children together, H.H. (Daughter), who was born in 2012, and J.H. (Son), who was born in 2014 (collectively, the Children). On February 20, 2014, the Department of Child Services (DCS) filed a petition alleging that Son was a Child in Need of Services (CHINS) because he had tested positive for methadone at birth. A month later, DCS filed a petition alleging that Daughter was a CHINS because she had been found unsupervised while in Father's care and Father tested positive for amphetamines and methamphetamine. The Children were both placed in foster care.

---

[1] Mother consented to the termination of her parental rights and does not participate in this appeal. Accordingly, we limit our recitation of the facts to those relevant to Father's appeal.

[4] Prior to the CHINS determination, Father was referred for a substance abuse assessment, which he completed in April 2014. In May 2014, the Children were adjudicated CHINS, and following a dispositional hearing, Father was ordered to participate in a number of services, including home-based counseling, a substance-abuse assessment, random drug screens, a psychological evaluation, and a parenting program. Father was also ordered to complete all treatment recommendations developed as a result of the substance-abuse assessment and psychological evaluation.

[5] Father did not follow through with treatment recommendations resulting from his April 2014 substance-abuse assessment. Specifically, it was recommended that Father participate in outpatient treatment until he could be admitted into inpatient treatment. It was also recommended that Father complete individual therapy, weekly drug screens, a clinical interview, and a parenting assessment. Father attended one therapy session, and it was recommended that he participate in an inpatient program before furthering his substance abuse services "due to his high needs." *Transcript* at 13. DCS repeatedly attempted to contact Father to arrange inpatient treatment, but Father did not respond. Father did not complete a June 2014 referral for a second substance-abuse assessment. Father also failed to participate in home-based case management and was inconsistent with submitting to random drug screens and participating in supervised visitation.

[6] Father was arrested in August 2014 and spent seven months in jail. While Father was incarcerated, the trial court ordered that his supervised visitation be

suspended until he consistently participated in services for a period of one month. Upon his release in March 2015, Father contacted DCS and was again referred for services. At a permanency hearing on April 17, 2015, DCS reported that Father had tested positive for methamphetamine a few days after his release from jail. DCS also reported that Father been referred for a mental health evaluation and detox, but that he had not engaged in those services. At that time, the trial court changed the permanency plan for the Children to adoption.

[7] Father subsequently completed a substance-abuse assessment and a five-day detox program. He was required to enroll in inpatient treatment by April 27, 2015, but he failed to do so. On May 7, 2015, DCS filed its termination petition. Father was arrested again in June 2015, and he remained incarcerated at the time of the September 1, 2015 termination hearing, at which he appeared telephonically.[2] At the conclusion of the hearing, the trial court took the matter under advisement. On September 18, 2015, the trial court issued its order terminating Father's parental rights to the Children. Father now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[2] The transcript lists the date of this hearing as August 31, 2015. However, the Chronological Case Summary lists the date as September 1, 2015.

[8] When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside its judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N .E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*. Thus, if the evidence and inferences support the decision, we must affirm. *Id.*

[9] The trial court entered findings in its order terminating Father's parental rights. When the trial court enters specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous only if the findings do not support the court's conclusions or the conclusions do not support the judgment thereon. *Id.*

[10] We recognize that the traditional right of parents to "establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. Although parental rights are of constitutional dimension, the law provides for the termination of these rights when parents are unable or unwilling to meet

their parental responsibilities. *In re R.H.*, 892 N.E.2d 144, 149 (Ind. Ct. App. 2008). In addition, a court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding the termination. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *Id.*

## 1. Motion for Continuance

Father first argues that the trial court abused its discretion by denying his motion to continue the termination hearing. "A trial court's ruling on a motion for a continuance in a termination of parental rights case is reviewed for an abuse of discretion." *In re E.D.*, 902 N.E.2d 316, 321 (Ind. Ct. App. 2009), *trans. denied*. An abuse of discretion may be found when the moving party has shown good cause for granting the motion, but no abuse of discretion will be found when the moving party has not demonstrated prejudice resulting from the denial of the motion. *In re K.W.*, 12 N.E.3d 241, 244 (Ind. 2014).

Father argues that he was entitled to a continuance because, according to his own testimony, he expected to sign a plea agreement resulting in his discharge to work release or home detention in November 2015, and he believed his latest possible release date would be March 2016—that is, six months after the termination hearing. Father argues that if his request had been granted, he would have had the opportunity to participate in services upon his release from jail and demonstrate his ability to remain drug free and provide a stable environment for the Children. In support of this claim that he desired to

participate in services, Father notes that he completed a number of voluntary programs while incarcerated.

[13]   Father directs our attention to *Rowlett v. Vanderburgh Cnty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*,[3] in which this court reversed the trial court's denial of a motion to continue a termination hearing. The father in that case was arrested, convicted, and incarcerated shortly after the CHINS case was initiated, and he was due to be released within six weeks of the termination hearing. *Id.* at 618. He requested the continuance because he wanted an opportunity to become established in the community and to participate in reunification services. *Id.* at 619. This court reversed the denial of his motion because he "had not had the opportunity to participate in services offered by [DCS] or to demonstrate his fitness as a parent." *Id.* The court noted that termination was "particularly harsh" because the father had participated in numerous services and programs while incarcerated. *Id.* Specifically, he "had participated in nearly 1,100 hours of individual and group services, including services in encounters, anger management and impulse control, parenting skills, domestic violence, self-esteem, self-help, and substance abuse." *Id.* at 622. Additionally, he had maintained a relationship with his children through letters and phone calls. *Id.*

---

[3] The other cases Father cites in support of his argument that he established good cause for a continuance are inapposite because they do not discuss the issue of whether the trial court abused its discretion in denying a parent's motion for a continuance. Instead, they address the sufficiency of the evidence supporting the trial court's ruling on a petition to terminate parental rights. We address Father's sufficiency argument separately.

[14] This case is readily distinguishable. Father has not been incarcerated throughout the entirety of the CHINS and termination cases. Instead, he has had multiple arrests after the Children were removed. Father continued to use drugs during the CHINS case, testing positive for methamphetamine shortly after being released from a seven-month stint in jail. Indeed, Father testified that the last time he used drugs was June 18, 2015—the date of his last arrest. Moreover, Father failed to participate in reunification services on two separate occasions when he was not incarcerated and he has not had contact with the Children since July 2014. Additionally, according to his own testimony, under the terms of his expected plea agreement, Father could have spent as long as six more months in jail following the termination hearing. Finally, Father's participation in programs while incarcerated is not nearly as extensive as that of the father in *Rowlett*, and while a number of Certificates of Completion were entered into evidence showing that Father had participated in programs during his incarceration, none of the certificates address substance-abuse treatment.[4]

[15] In sum, Father has had the opportunity to engage in reunification services as ordered, and he has consistently chosen not to do so. In light of Father's dismal track record, we cannot conclude that the trial court abused its discretion in

---

[4] Although Father testified that he participated in programs relating to substance abuse and relapse prevention and that he had been active in Alcoholics Anonymous and Narcotics Anonymous, he presented no documentary evidence supporting these assertions.

declining to allow him still more time to demonstrate that he could become an adequate parent.

## 2. Sufficiency of the Evidence

[16] Father also challenges the trial court's judgment terminating his parental rights as unsupported by the evidence. First, Father argues that a number of the trial court's factual findings are clearly erroneous. Specifically, Father challenges the trial court's finding number 13, in which the court stated that "[d]etoxification and substance abuse assessments were referred in June 2014. [Father] failed to participate." *Appellant's Appendix* at 20. Father argues that this finding is clearly erroneous because he underwent a substance-abuse assessment and detox program in April 2015. Father fails to note that those services were not completed until after he was referred for services a second time after being released from jail in March 2015. The trial court's finding that Father did not complete the substance-abuse services referred in June 2014 is supported by the record.

[17] Father also challenges finding number 15, in which the trial court stated that "[a] drug screen referral was made in April 2014. No screens were conducted." *Id.* DCS concedes that this finding is not supported by the record, noting that the evidence presented at the termination hearing instead established that Father submitted to some drug screens, but his participation was inconsistent. Although the trial court's finding that *no* screens were conducted was incorrect, in light of Father's failure to consistently submit to drug screens, we conclude

that the error was not so serious that it affected the trial court's ultimate decision. *See In re A.C.B.*, 598 N.E.2d 570, 573 (Ind. Ct. App. 1992) (affirming the termination of parental rights despite an erroneous finding because the error was "not of such magnitude that it calls into question the court's conclusion").

[18]  Father next challenges finding number 17, in which the trial court stated that "[p]arenting time was to take place two times a week and a referral started [o]n May 27, 2014. Sessions were closed out by the supervising agency due to [Father] not appearing, or cancelling, too many times." *Appellant's Appendix* at 21. This finding is clearly supported by the testimony of Family Case Manager (FCM) Sonja Daniel. Specifically, FCM Daniel testified that Father "began seeing his children for visits on May 27th, 2014 and visits occurred up until July 3rd, 2014 and that was because the Children's Bureau closed out due to too many no shows and cancellations on [Father's] behalf." *Transcript* at 18.

[19]  Father also takes issue with finding number 27, in which the trial court states that Father "was in a detoxification program from April 21, 2015 through April 25, 2015. He failed to follow up with treatment thereafter." *Appellant's Appendix* at 21. Father argues that he did, in fact, follow up with four to six weeks of treatment before becoming incarcerated. The record indicates that although Father completed detox in April 2015, he did not enroll in inpatient treatment as recommended by the service provider. Although Father testified that he "went to Midtown [and] . . . was there for about four to six weeks," he did not explain what services he received there. *Transcript* at 113. In any event, Father presented no evidence supporting his assertion that he received

treatment of any kind at Midtown, and the trial court was not required to credit Father's testimony to that effect. Finding number 27 is supported by the record.

[20] Father next challenges finding number 28, which simply states that "[n]o other services were completed." *Appellant's Appendix* at 21. To be fully understood, this finding must be read in conjunction with the preceding findings, which state that upon his release from jail in March 2015, Father was referred for detox, substance-abuse treatment, random drug screens, and home-based therapy and case management. Finding number 28 indicates that aside from the detox program mentioned in finding number 27, Father did not complete any of those services. This finding is supported by the record.

[21] Father next takes issue with finding number 39, which states in relevant part that "[w]ithout successfully addressing substance abuse addiction, [Father] would not be able to provide the [C]hildren with a safe environment. His pattern of criminal activities could lead to further instability and not being available to parent." *Appellant's Appendix* at 21-22. Father claims that he addressed his addiction and criminal behavior by participating in substance-abuse assessments, an aftercare program (apparently referring to the services he claims to have received at Midtown), and various programs while in jail. As we noted above, Father submitted no evidence supporting his claim that he participated in substance-abuse treatment at Midtown, and although Father participated in programs while incarcerated, he submitted no evidence that any of those programs addressed substance abuse. Although Father participated in a substance-abuse assessment and detox program, he did not follow up with

treatment recommendations. In light of Father's untreated substance-abuse problems and his history of committing substance-related offenses, it was perfectly reasonable for the trial court to find that Father's patterns of behavior could lead to further instability and future incarcerations.

[22] Father also challenges the trial court's "Combined Finding/Conclusion 40," *Appellant's Brief* at 25, in which the trial court stated that this case is distinguishable from *In re K.E.*, 39 N.E.3d 641, 644 (Ind. 2015), in which our Supreme Court reversed the termination of an incarcerated father's parental rights. Although this case and *K.E.* share certain factual similarities, the cases are readily distinguishable. Notably, the father in *K.E.* was incarcerated prior to the child's birth and remained so throughout the entirety of the CHINS and termination proceedings and therefore had no opportunity to participate in services in the community. *Id.* Additionally, the father in *K.E.* had maintained contact with the child through visitation and nightly phone calls. *Id.* In this case, however, Father, had the opportunity to participate in services while he was not incarcerated, and instead continued to use drugs and commit crimes. Moreover, his supervised visitation with the Children was ended after he repeatedly cancelled and/or failed to show up, and his visits were never reinstated because he failed to participate in services and provide clean drug screens. The trial court's finding that *K.E.* is distinguishable from this case is not clearly erroneous.

[23] We next address Father's argument that the findings were insufficient to support the trial court's ultimate judgment terminating his parental rights.

Before an involuntary termination of parental rights may occur in Indiana, DCS is required to allege and prove by clear and convincing evidence, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services[.]

Ind. Code § 31-35-2-4(b)(2)(B). DCS must also prove by clear and convincing evidence that termination is in the best interests of the child. I.C. § 31-35-2-4(b)(2)(C).

[24] Father challenges the trial court's findings as to subsection (b)(2)(B)(i) and (ii). We note that DCS was required to establish only one of the three requirements of subsection (b)(2)(B) by clear and convincing evidence before the trial court could terminate parental rights. *See In re L.V.N.*, 799 N.E.2d 63, 69 (Ind. Ct. App. 2003). Here, the trial court found that DCS presented sufficient evidence to satisfy two of those requirements, namely, that there is a reasonable probability the conditions resulting in the Children's removal or continued

placement outside Father's care will not be remedied and that the continuation of the parent-child relationship poses a threat to the Children's well-being. *See* I.C. § 31-35-2-4(b)(2)(B)(i), (ii). We focus our inquiry on the requirements of subsection (b)(2)(B)(i)—that is, whether there was sufficient evidence to establish a reasonable probability that the conditions resulting in the Children's removal or continued placement outside Father's care will not be remedied.

[25] In making such a determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *Id.* In making this determination, courts may consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The court may also consider the parent's response to the services offered through DCS. *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *In re L.S.*, 717 N.E.2d at 210. Moreover, the failure to exercise visitation demonstrates a "lack of

commitment to complete the actions necessary to preserve [the] parent-child relationship." *Lang*, 861 N.E.2d at 372 (quoting *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002)) (alteration in original).

[26] The trial court made the following finding with respect to subsection (b)(2)(B)(i):

> There is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied by their father. [Father] has had a number of months while not incarcerated to demonstrate he is able or willing to make the effort needed to be given additional time to pursue reunification. However his lack of participation in services and parenting time, and his pattern [of] drug use and criminal activities evidences he is not able or willing to overcome conditions.

*Appellant's Appendix* at 21.

[27] On appeal, Father argues that he demonstrated he is willing and able to make the necessary changes by completing a substance-abuse assessment, detox, and participating in programs in jail. As we have explained, however, Father never followed through with substance-abuse treatment as ordered and he continued to use drugs even after the termination petition was filed. Father also failed to participate in home-based services and he did not consistently submit to random drug screens. Although Father was incarcerated and therefore unable to participate in services throughout much of the underlying CHINS case, it is well settled that "[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with

their children." *Castro v. Ind. Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006) (quoting *Matter of A.C.B.*, 598 N.E.2d 570, 572 (Ind. Ct. App. 1992)), *trans denied*. Moreover, Father failed to participate in services when he was not incarcerated, even failing to consistently attend supervised visitation. After Father's visits were suspended, he did not participate in services and provide clean drug screens as necessary to have his visits reinstated, and as a result, he has not had contact with the Children since July 2014. As for Father's assertion that his participation in services while in jail precludes a finding that conditions will not be remedied, our Supreme Court has explained that the trial court may in its discretion weigh a parent's prior history more heavily than efforts made only shortly before termination. *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[28] Father also directs our attention to his own testimony that he had been drug free for three months at the time of the termination hearing. We note, however, that Father was incarcerated during that entire period, and he immediately went back to using drugs the last time he was released from jail in March 2015. For all of these reasons, the trial court's finding that there is a reasonable probability that the conditions resulting in the Children's removal and continued placement outside Father's care will not be remedied is amply supported by the evidence. Father's arguments to the contrary are merely requests to reweigh the evidence.

[29] Father also challenges the trial court's finding that termination of his rights is in the Children's best interests. In determining whether termination of parental

rights is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). In so doing, the trial court must subordinate the interest of the parent to those of the child, and the court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

[30] Here again, Father's argument is simply a request to reweigh the evidence. Throughout the entirety of these proceedings, Father has been using drugs and has been in and out of jail. Consequently, he has been unable to be a stable presence in the Children's lives or provide adequate supervision. Father's arguments to the contrary notwithstanding, he had made no real progress toward these goals at the time of the termination hearing. According to his own testimony, he was facing as much as six more months in jail before he would have the opportunity to even begin to demonstrate that he could participate in services consistently, remain drug free, and provide an appropriate home. The Children cannot wait forever; they need stability and permanency now. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010) (explaining that "a child's need for permanency is an important consideration in determining the best interests of a child"). For all of these reasons, we conclude that the evidence presented was sufficient to support the trial court's finding that termination was in the Children's best interests.

[31] Judgment affirmed.

Bailey, J. and Bradford, J., concur.